Argued and submitted June 15, reversed and remanded August 12, reconsideration denied October 9, petition for review denied November 17, 1987 (304 Or 405)

## ESTATE OF PAUL GOLD et al,
*Petitioners,*

*v.*

## CITY OF PORTLAND,
*Respondent.*

## (LUBA No. 86-102; CA A44142)

740 P2d 812

Diane Spies, Portland, argued the cause for petitioners. With her on the brief was Diane Spies & Associates, P.C., Portland.

Jeannette M. Launer, Portland, argued the cause for respondent. With her on the brief was Kathryn Beaumont Imperati, Chief Deputy City Attorney, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

Deits, J., dissenting.

## NEWMAN, J.

Petitioners seek review of LUBA's decision affirming the City of Portland's approval of the Tenth Amendment to its Downtown Waterfront Urban Renewal Plan.[1] The Portland Development Commission (PDC), which is the city's urban renewal agency, submitted the proposed amendment to the city council. The ordinance approving the amendment includes petitioners' property in the urban renewal area and authorizes PDC to acquire it. Petitioners make two assignments, both of which assert that, in approving the amendment, the city failed to follow quasi-judicial procedures and that LUBA erred by ruling that the city's decision was legislative rather than quasi-judicial in nature.[2]

The city's decision was made pursuant to ORS Chapter 457 and, in particular, ORS 457.095:

"The governing body of the municipality, upon receipt of a proposed urban renewal plan and report from the municipality's urban renewal agency and after public notice and hearing and consideration of public testimony and planning commission recommendations, if any, may approve the urban renewal plan. The approval shall be by nonemergency ordinance which shall incorporate the plan by reference. Notice of adoption of the ordinance approving the urban renewal plan, and the provisions of ORS 457.135, shall be published by the governing body of the municipality in accordance with ORS 457.115 no later than four days following the ordinance adoption. The ordinance shall include determinations and findings by the governing body that:

"(1)   Each urban renewal area is blighted;

"(2)   The rehabilitation and redevelopment is necessary

---

[1] We reviewed the same decisions of LUBA and the city in *Dennehy v. City of Portland,* 87 Or App 33, 740 P2d 806 (1987).

[2] Petitioners' first assignment is:

"It was reversible error for the Land Use Board of Appeals to determine that the action before the City Council to condemn the landowners' property was legislative as opposed to quasi-judicial."

They contend in their second assignment that:

"It was error for LUBA to fail to characterize the Portland City Council proceedings as quasi-judicial and thus require the City to make adequate findings of fact and conclusions of law, supported by clear reasons when a substantial amendment under ORS [chapter] 457 is requested."

to protect the public health, safety or welfare of the municipality;

"(3) The urban renewal plan conforms to the comprehensive plan and economic development plan, if any, of the municipality as a whole and provides an outline for accomplishing the urban renewal projects the urban renewal plan proposes;

"(4) Provision has been made to house displaced persons within their financial means in accordance with ORS 281.045 to 281.105 and, except in the relocation of elderly or handicapped individuals, without displacing on priority lists persons already waiting for existing federally subsidized housing;

"(5) If acquisition of real property is provided for, that it is necessary;

"(6) Adoption and carrying out of the urban renewal plan is economically sound and feasible; and

"(7) The municipality shall assume and complete any activities prescribed it by the urban renewal plan."

The statutes are applicable to the adoption of "substantial amendments" like the one here, as well as to the approval of plans. ORS 457.220(2).

LUBA concluded that the city council's decision was legislative because, as LUBA construed ORS 457.095 and ORS Chapter 457 generally, the city council was not required to take any action on the proposed amendment. Consequently, it reasoned, "the process [was not] bound to result in a decision," and the decision was therefore not a quasi-judicial one under *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 602, 601 P2d 769 (1979).

■ We agree with LUBA and the city that the urban renewal statutes do not require that the city make a decision to approve or disapprove or take any other action on a proposed amendment. *See Dennehy v. City of Portland,* 87 Or App 33, 37, 740 P2d 806 (1987); *compare Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm., supra,* 287 Or at 605-606. As LUBA in effect observed, the statute simply says that the governing body *may* approve the proposal, not that it *must* do anything.

The question is whether the absence of a requirement that a decision be made means that the decision that was

made was legislative rather than quasi-judicial. In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm., supra,* the court enumerated several considerations, of which the necessity or lack of necessity for a decision was one, that bear on whether a decision is to be characterized as legislative or quasi-judicial:

> "Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply preexisting criteria to concrete facts. The latter test alone proves too much; there are many laws that authorize the pursuit of one or more objectives stated in general terms without turning the choice of action into an adjudication. Thus a further consideration has been whether the action, even when the governing criteria leave much room for policy discretion, is directed at a closely circumscribed factual situation or a relatively small number of persons. The coincidence both of this factor and of preexisting criteria of judgment has led the court to conclude that some land use laws and similar laws imply quasijudicial procedures for certain local government decisions, as in *Fasano v. Washington County Comm.,* 264 Or 574, 507 P2d 23 (1973) and *Peterson v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977).
> \* \* \*
>
> "Such determinations imply no constitutional or other generalizations about such decisions being either legislative or adjudicative for all purposes. *See, e.g., Western Amusement v. Springfield,* 274 Or 37, 42, 545 P2d 592 (1976). The separate reasons for implying procedural safeguards modeled on adjudications must be kept in sight. One reason is to help assure that the decision is correct as to facts, another is to help assure fair attention to individuals particularly affected. When the preexisting criteria governing a factual situation are quite exact and designed to leave little room for unguided policy choice, and the decision depends on disputed facts, inferences, or predictions, quasijudicial procedures can allow those most concerned to participate in establishing the pertinent factual premises even when the decision concerns many people in a wide area. On the other hand, when the criteria applied in a decision of small compass allow wide discretionary choice, a formal hearing procedure is not designed to 'judicialize' factfinding, which may not be at issue. Rather it is designed to provide the safeguards of fair and open procedures for the relatively few individuals adversely affected, in lieu of the political safeguards on which our system relies in large scale policy choices affecting many persons." 287 Or at 602.

We later explained in *1000 Friends of Oregon v. Wasco Co.*

*Court,* 80 Or App 532, 712 P2d 1034, *rev allowed* 302 Or 299 (1986):

> "In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.,* [*supra,*] the court described a number of factors to consider in determining whether a county land use action is quasi-judicial. 'Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply preexisting criteria to concrete facts.' 287 Or at 602. Other relevant factors are the importance of assuring that the decision is factually correct and that the decision-maker gives fair attention to affected individuals. The number of people affected and the size of the area covered are less important considerations. 287 Or at 603." 80 Or App at 536. (Footnote omitted.)

■  The city acknowledges, correctly, that its decision to approve the amendment required the application of the pre-existing criteria in ORS Chapter 457 to concrete facts and was directed to a closely circumscribed factual situation: the application of the plan to the parcel of property in which petitioners are interested. The only criterion that *Strawberry Hill 4 Wheelers* establishes for characterizing a decision as quasi-judicial which the city argues that its decision did not meet — and the only criterion which LUBA considered — is the "bound to result in a decision" test. The city contends, however, that the court held in *Strawberry Hill 4 Wheelers* that "all tests for characterizing a decision as quasi-judicial must be met" and, if a decision does not fit within all of those tests, it is legislative in character. The city does not identify where in its opinion the Supreme Court so held, and we do not find a holding or a conclusion to that effect in the opinion.[3]

---

[3] The language we find which comes closest to supporting the city's understanding follows the language quoted in the text and states:

> "The fact that a policymaking process is circumscribed by [statutory or local] procedural requirements does not alone turn it into an adjudication. We have referred above to the general characteristics of adjudication that the process, once begun, calls for reaching a decision and that the decision is confined by preexisting criteria rather than a wide discretionary choice of action or inaction." 287 Or at 604.

However, we do not read that to mean that all of the criteria must be met for a decision to qualify as quasi-judicial. It refers to "general characteristics," not to universal requirements. Moreover, in its context, it says no more than that a particular component of certain decisions—procedural requirements imposed by "a law or a charter"—is not enough in itself to make the decisions adjudicative. The language does not imply that *all* of the general characteristics must be present for a decision to be quasi-

Neither *Strawberry Hill 4 Wheelers, Wasco Co. Court,* nor any other case that the parties cite or we have found has answered whether a decision can be characterized as quasi-judicial if it satisfies fewer than all of the *Strawberry Hill 4 Wheelers* criteria for that characterization or, specifically, if it does not come within the "bound to result in a decision" test. In *Strawberry Hill 4 Wheelers,* the Supreme Court concluded that the road vacation statutes required that a decision be made and that the decision also had quasi-judicial attributes under the other criteria defined in that opinion. Similarly, in *Wasco Co. Court,* we concluded that the procedures applicable to the county court's consideration of an incorporation petition required that it make a decision and that the decision was also a quasi-judicial one under other *Strawberry Hill 4 Wheelers* tests. Neither case is authority that the "bound to result in a decision" test *must* be satisfied for a decision to be quasi-judicial in nature. Both cases hold that that test as well as others *were* met. They do not answer whether the decision could have been regarded as quasi-judicial if *any* of the tests had *not* been met.

■ Contrary to the city's understanding that the question it raises was answered in *Strawberry Hill 4 Wheelers,* the question is still one of first impression. The earlier cases, however, do provide guidance. The logic of *Strawberry Hill 4 Wheelers,* as well as its language and our language in *Wasco Co. Court,* support the opposite answer from the one the city espouses. The language which we have quoted from the opinions contemplates a balancing of the various factors which militate for or against a quasi-judicial characterization and does not create the "all or nothing" test that the city ascribes to *Strawberry Hill 4 Wheelers.* That opinion emphasized that the reasons "for implying procedural safeguards modeled on adjudications must be kept in sight." Among those reasons are, first, the assurance of correct factual decisions and, second, the assurance of "fair attention to individuals particularly affected." The first reason is directly related to the criterion of "applying pre-existing criteria to concrete facts"; the second relates directly to the criterion of affecting a

___

judicial in nature. Moreover, for the reasons that we state in the text, to read the language as so implying would make it inconsistent with the other language from *Strawberry Hill 4 Wheelers* which we have quoted in the text.

"closely circumscribed factual situation or relatively small number of persons."

Those reasons do not disappear simply because the process does not *have* to result in a decision. We do not agree with the city that a governing body's decision in a case of this kind must or may be classified as legislative when it comes within all of the other relevant criteria for a quasi-judicial characterization and when a decision was in fact made. The needs for protection of the fact-finding process and of the small numbers of persons interested in the circumscribed factual situation are not lessened with respect to the decision that *was* made simply because the city was not *required* to make a decision. Under the circumstances, it is not only permissible to characterize the decision as quasi-judicial, notwithstanding that the process was not bound to result in a decision; that characterization is inescapable. Every factor for requiring quasi-judicial protection is present. The city could have decided to do nothing. However, having elected to make a decision to approve the amendment, it was required to act quasi-judicially.

■     The question remains whether LUBA's error in characterizing the decision requires that we reverse. In response to petitioners' first assignment, LUBA concluded that the decision was a legislative one, but also that, "[w]hether or not the process may be characterized as quasi-judicial or legislative, * * * petitioners have not shown prejudice to their substantial rights" from any deficiency in the procedures that were followed. Given that conclusion, to which petitioners do not separately assign error, the procedural defects demonstrated by their first assignment would not warrant reversal. ORS 197.835(8)(a)(B).

It is a closer question whether petitioners' second assignment demonstrates that LUBA's conclusion that the proceeding was legislative resulted in reversible error. Most of petitioners' specific arguments are that there was insufficient evidence to support the findings that the city made pursuant to ORS 457.095. LUBA responded to those arguments, and petitioners do not assign error to LUBA's specific responses.

We understand, however, that petitioners also contend, in support of their second assignment, that the city did not make certain findings which ORS 457.095 does not

require, but which might nevertheless be required in a quasi-judicial proceeding; that some of the findings the city did make are conclusory and therefore do not satisfy quasi-judicial requirements; and that the city's findings are not supported by statements of reasons and do not demonstrably support the city's conclusions. *See, e.g., Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977). We imply no view on the merits of those arguments, which are for LUBA to consider in the first instance. Because it concluded that the decision was legislative, it did not do so in its first review. A remand is necessary.

Reversed and remanded.

**DEITS, J.,** dissenting.

The majority holds that the city's amendment of its Downtown Waterfront Urban Renewal Plan was quasi-judicial in nature and that LUBA must review the decision to determine if the city complied with applicable quasi-judicial procedures. I would hold that the city's decision was legislative in nature and, accordingly, that proper procedures were followed. I therefore dissent.

The standards for determining whether the city's decision is legislative or quasi-judicial are set forth in *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979). The dispute in this case concerns the application of those standards. One of the characteristics of a quasi-judicial decision identified in *Strawberry Hill 4 Wheelers* is that the process is bound to result in a decision. The majority concludes, although that is one of a number of relevant considerations to be balanced in deciding if a decision is legislative or quasi-judicial, it is not necessary that the process be bound to result in a decision in order for the process to be characterized as quasi-judicial. I disagree.

I interpret *Strawberry Hill 4 Wheelers* as establishing two basic requirements in order for a decision to be characterized as quasi-judicial: (1) The process must be bound to result in a decision; and (2) the decision must involve applying preexisting criteria to concrete facts. The opinion explains in some detail the application of the second requirement, noting that the fact that preexisting criteria exist for a decision does

not necessarily require that an adjudicative process be followed and explaining further considerations in determining whether the decision requires an adjudicative process. However, nowhere in *Strawberry Hill 4 Wheelers* or in subsequent decisions applying its standards has it been said that the first factor, that the process must be bound to result in a decision, is not required for a decision to be quasi-judicial.[1]

In addition to the fact that the language of *Strawberry Hill 4 Wheelers* requires that conclusion, the requirement is a logical one. The underlying rationale for distinguishing between legislative and quasi-judicial decisions on the basis of whether the process is bound to result in a decision is that that is the basic distinction between the activities of a court and of a legislature. A legislature is *never* required to make a decision. A court is always required to take some action on a case, even if that action is only to dismiss it.

In the present case, it is agreed that the process was not bound to result in a decision. Therefore, I would hold that the decision was legislative.[2] This is not to say that in a case, such as this, where important individual *and* community interests are involved, it would be inappropriate for a local government to use procedural safeguards such as notice, prior reports and public hearings to insure the protection of these important interests in the legislative process. In this case, the city did use such procedures. Petitioners were given notice and an opportunity to be heard before both the Planning Commission and the City Council. I would affirm.

---

[1] In both *Strawberry Hill 4 Wheelers* and *1000 Friends of Oregon v. Wasco Co.,* 80 Or App 532, 712 P2d 1034, *rev allowed* 302 Or 299 (1986), the courts, before concluding that the decisions were quasi-judicial, concluded that the process was bound to result in a decision.

[2] The conclusion that the city's amendment of its Urban Renewal Plan was a legislative act is also supported by the provisions of ORS 457.220 that "any substantial change made in the Urban Renewal Plan shall, before being carried out, be approved *in the same manner as the original plan.*" (Emphasis supplied.)