Argued and submitted August 15, affirmed September 14, 1988

HEMSTREET,
*Petitioner,*

*v.*

SEASIDE IMPROVEMENT COMMISSION et al,
*Respondents.*

(LUBA 87-118; CA A49015)

761 P2d 533

Kenneth S. Eiler, Seaside, argued the cause and filed the brief for petitioner.

No appearance for respondent Seaside Improvement Commission.

Dennis P. Rawlinson, Portland, argued the cause for respondent John Q. Hammons. With him on the brief was Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's dismissal of his appeal from a decision by the Seaside Improvement Commission, the governing body of the Trails End Urban Renewal District. The commission accepted respondent Hammons' proposal rather than petitioner's competing proposals to lease the air space over certain property owned by the district. The decision, as memorialized in the commission's minutes, reads:

> "*Motion* to accept Mr. Hammons' proposal, based on further details to be agreed upon by the attorneys and Administrative Officer, and subject to the approval of the Improvement Commission; carried * * *."

LUBA concluded that the decision was not "final" and was therefore not an appealable "land use decision" as defined by ORS 197.015(10), *see* ORS 197.825, and did not come within the "significant impact" test which the Supreme Court has devised as an alternative to the statutory definition as a basis for LUBA's jurisdiction. *See City of Pendleton v. Kerns,* 294 Or 126, 653 P2d 992 (1982). Petitioner does not contest LUBA's statutory conclusion, but argues that it erred in holding that district's decision was not one which has a significant impact on present or future land use.

LUBA reasoned, *inter alia:*

> "We believe the Supreme Court would conclude that only 'final decisions' can have a significant impact on land use, as the court uses that concept.

> "Potentially, the commission's decision in this case will lead to a significant impact on land use. However, the lease remains to be negotiated and must be approved by the commission. In addition, permits or other approvals may be required under the city's land use regulations before construction of the proposed parking structure can occur. A decision that only 'will have potential impact' does not satisfy the significant impact test. *Billington v. Polk County,* 299 Or 471, 479, 703 P2d 232 (1985)."

We agree with LUBA that the decision has no more than a potential impact on future land use and that it therefore does

not come within the significant impact test as explained by the court in *Billington*.[1]

Petitioner appears to argue that, although the decision may be contingent on future events as to the Hammons proposal, it is, realistically, a final rejection of his proposal. Because petitioner and Hammons planned very different uses of the space that they sought to lease, petitioner reasons that the *de facto* final rejection of his proposal has a significant impact on land use. We disagree with his premise. The decision is as contingent with respect to the eventual use of the space as it is with respect to the award of the lease.

Implicit in petitioner's argument is the apprehension that the district has set an inevitable process in motion and that, by proceeding piecemeal, it can defeat the possibility of LUBA review of its preliminary actions when it eventually does make a dispositive and reviewable decision. Petitioner's concern is unwarranted. The reason that the present decision is not reviewable is that it is contingent on a later decision. If a dispositive decision is made and is appealed to LUBA, this intermediate decision and the record and proceedings which culminated in it will be susceptible to LUBA's review.

Petitioner attempts to analogize the district's action here to the decision which LUBA and we reviewed in *Estate of Gold v. City of Portland,* 87 Or App 45, 740 P2d 812, *rev den* 304 Or 405 (1987). The analogy does not succeed. The local decision there "include[d] [the] petitioners' property in the urban renewal area and authorize[d] [the urban renewal agency] to acquire it." 85 Or App at 47. The inclusion of the property in the urban renewal area had direct land use effects, independently of the acquisition efforts which were to follow. Here, the property was already owned by the district before it made the decision in question. In *Hemstreet v. Seaside Improvement Commission,* ___ Or LUBA ___ (1988), and *Hemstreet v. City of Seaside,* ___ Or LUBA ___ (1988), petitioner here appealed to LUBA from the actions through which the district acquired ownership of the property. LUBA dismissed both appeals on the ground that the results of the

---

[1] We therefore need not comment on LUBA's and the parties' shared understanding that only "final" decisions can have a significant impact. *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 359, 703 P2d 207 (1985).

actions were not land use decisions subject to its review. Neither of those holdings by LUBA is now before us. We need not decide here whether the city's and the district's actions in connection with the acquisition, like the present decision, can be reviewable by LUBA at the time when district makes a decision relating to the use of the property that is ripe for review.

Affirmed.