Argued and submitted March 3, affirmed as modified July 23, 1980

WEST SIDE SANITARY DISTRICT, et al,
*Petitioners,*
*v.*
HEALTH DIVISION OF THE
DEPARTMENT OF HUMAN RESOURCES, et al,
*Respondents.*

(CA 13765, SC 26617)

614 P2d 1151

See also 289 Or 409, 614 P2d 1148; 289 Or 399, 614 P2d 1144; 289 Or 393, 614 P2d 1141.

418

E. R. Bashaw and Steven P. Couch, Medford, argued the cause and filed briefs for petitioners.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

B. J. Matzen, Klamath Falls, also argued the cause for respondents.

Before Denecke, Chief Justice, and Tongue, Howell, Lent and Peterson, Justices.

HOWELL, J.

## HOWELL, J.

This is the fourth of four related cases decided this date presenting questions concerning the compulsory annexation of a territory by the City of Klamath Falls (City) to remove a danger to public health. The instant case arises from a petition for judicial review of the final order of the Environmental Quality Commission (EQC) certifying its approval of the City's plans for alleviating or removing the conditions causing a danger to public health in the territory.[1] The Court of Appeals affirmed, 42 Or App 755, 601 P2d 858 (1979). We granted review.

In December, 1977, the Klamath County Board of Health, believing that a danger to public health existed within the subject territory, adopted a resolution and forwarded a copy to the Health Division, proposing that the territory be annexed to the City of Klamath Falls pursuant to ORS 222.850 to 222.915. Those statutes provide for city annexation of a territory,

"\* \* \* without any vote in such territory or any consent by the owners of land therein if it is found, as provided in ORS 222.850 to 229.915 [sic], that a danger to public health exists because of conditions within the territory and that such conditions can be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities." ORS 222.855.

The Health Division, after holding public hearings in the subject territory pursuant to ORS

---

[1] In the first case, *West Side Sanitary Dist. v. LCDC (#26780),* 289 Or 393, 614 P2d 1141 (1980), petitioners sought review by the Land Conservation and Development Commission of the Health Division order issued pursuant to ORS 222.880, finding that a health hazard exists. In the second case, *State ex rel Rodriguez v. Gebbie,* 289 Or 399, 614 P2d 1144 (1980), petitioners sought a writ of mandamus to compel the assistant director of the Health Division to initiate review of a petition submitted under ORS 222.885. In the third case, *West Side Sanitary Dist. v. LCDC (#26779),* 289 Or 409, 614 P2d 1148 (1980), petitioners sought LCDC review of the order of EQC issued pursuant to ORS 222.898.

222.870, issued an order finding that a danger to public health exists in the territory because of conditions

> "which are conducive to the propagation of communicable or contagious disease producing organisms * * * , conditions caused by inadequate installations for the disposal and treatment of sewage in the territory."

The findings were filed with the City and with EQC pursuant to ORS 222.880(2).

On November 1, 1978, pursuant to ORS 222.885, petitioners filed with the Health Division a petition, allegedly signed by not less than 51 percent of the registered voters in the territory proposed to be annexed, proposing an alternative plan of city annexation to a sanitary district instead of to the City. According to ORS 222.885(2):

> "Upon receipt of such petition, the division shall:
>
> "(a)  Immediately forward copies of the petition to the city, and, except where the condition causing the danger to public health is impure or inadequate domestic water, to the [Environmental Quality Commission].
>
> "(b)  Order further proceedings on the findings filed under ORS 222.880 stayed pending the review permitted under ORS 222.890 and this section."

The Health Division, however, did not act upon the petition or perform any duties under ORS 222.885(2).

As required by ORS 222.897, the City, on December 8, 1978, submitted to EQC its plans, with specifications and time schedule, for the construction of facilities to alleviate or remove the health hazard in the territory. EQC evaluated the City's plans pursuant to ORS 222.898 and, on January 29, 1979, issued a certificate approving the City's plans.

Petitioners filed a petition for judicial review of the final order of EQC. They also sought judicial review of actions taken by the Health Division that

preceded and formed the basis of the EQC final order. In their petition for judicial review in the Court of Appeals, petitioners argued, inter alia, that the final order of EQC is unlawful because:

(1) the Health Division failed to consider statewide planning goals when it determined that a health hazard exists in the territory;

(2) the Health Division refused to submit petitioners' alternative plan for review;

(3) the Health Division did not consider whether the proposed annexation violated the principle of reasonableness;

(4) EQC failed to consider statewide planning goals when it certified its approval of the City's plans;

(5) EQC refused to consider and review petitioners' alternative plan;

(6) EQC did not consider whether the proposed annexation violated the principle of reasonableness.

We are faced, however, with a problem not raised by the parties. ORS 222.896 provides:

"Judicial review of final orders under ORS 222.850 to 222.915 shall be as provided in ORS 183.480 to 183.500 for judicial review of contested cases."

ORS 183.482(8)(a) provides that upon judicial review of contested cases:

"The court may affirm, reverse or remand the order. If the court finds that *the agency has erroneously interpreted a provision of law* and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law." (Emphasis added.)

ORS 183.482(8)(a) permits a court to set aside or modify an agency's final order if *that agency* had erroneously interpreted a provision of law. That statute does not contemplate that a court on judicial review of one agency's final order consider whether

another separate agency acted improperly and erroneously interpreted the law. If EQC were required to examine the legal validity of the actions of the Health Division with regard to finding a health hazard or with regard to submitting an alternative plan for review, or if EQC were required to act only upon legally valid actions of the Health Division, then perhaps the Court of Appeals would have had before it the question whether EQC erred in relying upon unlawful actions of the Health Division. But nowhere in ORS 222.850 to 222.915 is EQC required to review these actions. Therefore, the Health Division's actions were not reviewable before the Court of Appeals in this case unless properly made the subject of the petition for judicial review.

Petitioners describe ORS 222.850 to 222.915 as contemplating a "combined administrative proceeding" for compulsory annexation involving both the Health Division and EQC. Petitioners suggest thereby that the Health Division's findings (pursuant to ORS 222.880) that a health hazard exists did not constitute a "final order" but was merely an interlocutory action forming the basis for the final order of EQC. The legislature, however, did not describe the statutory proceedings as being a combined administrative proceeding leading up to a single final order of EQC. For the following reasons, we believe that the Health Division's findings under ORS 222.880 constitute a final order separate from the final order of EQC.

ORS 222.880(1) provides that, if the Health Division finds that no health hazard exists, the assistant director shall issue an "order" terminating proceedings under ORS 222.850 to 222.915. On the other hand, ORS 222.880(2) provides that, if the Health Division finds that a health hazard does exist, the assistant director shall "file a certified copy of his findings" with the City and with EQC. In the present case, the assistant director issued an "order adopting the findings of the hearings officer" determining that a health hazard exists.

ORS 183.310(4) provides:

"(a) 'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employes, officers or members of an agency. * * *

" * * * * * *.

"(b) 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A) Precedes final agency action; or

"(B) Does not preclude further agency consideration of the subject matter of the statement or declaration."

The instant case presents a problem that is likely to occur whenever the legislature requires that the findings or recommendations of one agency be the basis of the actions of another agency. The legislature might have intended that the second, acting, agency reexamine the findings of the first agency for procedural regularity or for substantive validity. Also, the legislature might have intended the first agency's findings to be judicially reviewble either when the findings are made—which may involve delay but may avoid needless action by the second agency—or when the second agency issues its final order. The choice, once it is recognized, is for the legislature.

In the instant case, the legislature did not specifically state that the findings of the Health Division pursuant to ORS 222.880(1) constitute a reviewable "order." An examination of the legislative history does not shed light on whether the legislature intended that the findings of the Health Division be subject to judicial review only after the findings become the basis of the final EQC or Health Division approval of City plans under ORS 222.898. However, if the legislature had intended that the findings not be a reviewable order, such an intent was not mainfested clearly in the statute. On the other hand, the findings under ORS 222.880(2) is an agency action directed to the City

because, upon receipt of the findings, the City is required by ORS 222.897 to submit plans for the alleviation or removal of the health hazard. The "findings" is therefore an "order" under ORS 183.310(4)(a).

■    We are of the opinion that the legislature intended the "findings" of the Health Division under ORS 222.880(2) to be a final order of the Health Division with regard to the existence of a health hazard. It is separate from any other order of the Health Division and EQC. If petitioners intended to challenge the Health Division's findings under ORS 222.880, petitioners should have sought judicial review of the Health Division's final order within the time limit prescribed by ORS 183.482(1), that is, within 60 days following the date the order was served. Because petitioners did not seek judicial review within the statutory time limit, and for the other reasons set forth above, the actions of the Health Division pursuant to ORS 222.880 (finding a health hazard exists) and ORS 222.885 (petition for alternative plan) were not before the Court of Appeals in this petition for judicial review.

■    We now turn to the contentions of petitioners that the final order of EQC is unlawful because EQC erroneously interpreted provisions of law. Petitioners argue that EQC failed to review the alternative plan petitioners had submitted to the Health Division. EQC, however, is not under a duty to consider an alternative plan unless the Health Division submits the plan to EQC. ORS 222.885(1) requires that the petition for an alternative plan be submitted to the Health Division, and ORS 222.885(2) requires that the Health Division submit the alternative plan to the appropriate agency for review. The statutes do not permit a petitioner to submit an alternative plan directly to EQC. Because the Health Division did not submit the alternative plan to EQC for review, EQC acted properly and did not apply the provisions of ORS 222.890 regarding review of an alternative plan.

Petitioners contend that EQC, in evaluating the City's plans under ORS 222.898, failed to consider statewide land use planning goals. As we held in *West Side Sanitary Dist. v. LCDC (#26779),* 289 Or 409, 614 P2d 1148 (1980), EQC is not required by ORS 197.180(1) to consider land use planning goals in applying the provisions of ORS 222.898.

██ Finally, petitioners argue that the final order of EQC is unlawful because EQC did not consider evidence relating to the reasonableness of the annexation. In *Portland Gen. Elec. Co. v. City of Estacada,* 194 Or 145, 159, 241 P2d 1129 (1952), we held that cities exercising the statutory power to annex territory must do so "reasonably." Even if we were to agree that "reasonableness" is required when cities choose to annex, "reasonableness" is nevertheless not required in compulsory annexations. In a compulsory annexation, a city is required to annex territory if a public health hazard exists and if the hazard may be removed or alleviated by city facilities. *See* ORS 222.855; 222.880; 222.900.

Affirmed as modified.